**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
Urbana Division

| | |
|---|---|
| VICKI L. COSTA,               )<br>                    Plaintiff,     )<br>        v.                              )<br>                                            )<br>KENNETH S. APFEL,        )<br>**Commissioner of the Social**   )<br>**Security Administration,**      )<br>                    Defendant.   ) | Case No. 05-2276 |

# REPORT AND RECOMMENDATION

In May 2003, Administrative Law Judge Barbara Welsch (hereinafter "ALJ") denied Plaintiff Vicki L. Costa's application for social security disability insurance benefits (hereinafter "DIB"). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act based on Plaintiff's capacity to perform a significant number of jobs in the national economy as of her date last insured. In December 2005, Plaintiff filed a Complaint To Review Decision of Social Security (#1) seeking judicial review of the final decision by the Regional Commissioner of Social Security Administration (hereinafter "SSA") denying DIB. In July 2006, Plaintiff filed a Motion for Summary Judgement (*sic*) (#12). In September 2006, Defendant filed a Motion for An Order Which Affirms the Commissioner's Decision (#14). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgement **(#12)** be **DENIED**.

### I. Background
### A. Factual Background

Plaintiff suffers from degenerative arthritis in her right hip and femur. Due to her condition, she stopped working as a secretary in November 1986, the alleged onset date of her disability. Plaintiff met the disability insured status requirements of the SSA from November 1986 through December 1991.

### B. Procedural Background

In April 1994, Plaintiff applied for DIB, alleging disability beginning November 1986 due to degenerative arthritis in her right hip. (R. 63-66.) The SSA denied Plaintiff's application initially in June 1994 and upon reconsideration in August 1994. (R. 67-71, 75-77.) Plaintiff appealed and in March 1995, ALJ Gerard Rickert issued a decision denying Plaintiff benefits. (R. 9-16.) Plaintiff appealed to the Appeals Council, which denied her request for review. (R. 6-8, 3-4.)

Plaintiff timely filed an appeal with this Court pursuant to 42 U.S.C. § 405(g). In February 1998, this Court issued a Report and Recommendation (No. 96-2286, #12) recommending that the Commissioner's determination of nondisability be reversed in part and the case remanded for further proceedings in accordance with the Court's recommendation. (R. 320-38.) Specifically, the Court concluded that (1) substantial evidence supported the ALJ's finding that the medical condition of Plaintiff's right hip during the period in question did not rise to the level of degenerative arthritis as defined by Section 1.03(A) (20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.03(A)); and (2) the ALJ's failure to discuss the objective medical evidence cited in Plaintiff's memorandum when addressing Plaintiff's residual functional capacity to perform her past relevant work as secretary did not constitute reversible error. (R. 333-34.) The Court also found that the ALJ improperly ignored Plaintiff's subjective testimony regarding her capacity to perform her past work as a secretary. (R. 335.) In March 1998, the District Court accepted the Report and Recommendation and entered judgment remanding the case to the Commissioner. (R. 339-40.)

In February 1999, ALJ Rickert held a hearing at which Plaintiff testified. (R. 422.) In April 1999, he issued a decision denying Plaintiff benefits. (R. 302-04.) He made the following findings: (1) the claimant had met the disability insured status requirements of the Social Security Act from November 11, 1986, through December 31, 1991; (2) the claimant has not engaged in substantial gainful activity since November 11, 1986; (3) the medical evidence establishes that the claimant has severe degenerative arthritis of the right hip and degenerative joint disease of the right knee, but she does not have an impairment or combination of

impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4; (4) the claimant's allegations were not fully credible for the period prior to the expiration of her date last insured; (5) the claimant had the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than ten pounds occasionally, pushing and pulling more than ten pounds occasionally, or standing and walking no longer than two or three hours during the day or thirty minutes at one time, prior to the expiration of her date last insured; (6) the claimant's past relevant work as a secretary, as the job is generally performed in the national economy, would not require the performance of work-related activities precluded by the above limitations; (7) the claimant's impairments did not prevent her from performing her past relevant work for the period prior to the expiration of her date last insured; and (8) the claimant was not under a "disability" as defined in the SSA at any time through the date of the decision. (R. 311.) The ALJ also found that Plaintiff's allegations of pain were not credible because Plaintiff only sporadically sought treatment for her condition, she did not display other signs of severe pain such as weight loss and problems concentrating, and she used her cane only intermittently. (R. 310.) Based on the vocational expert's (hereinafter "VE") testimony that Plaintiff's impairments would not preclude her from performing general secretarial duties, the ALJ further found that Plaintiff possessed the residual functional capacity to perform her former work as a secretary. (R. 310.)

Plaintiff timely filed a request for review and a statement of exceptions with the Appeals Council. (R. 300-01, 288-95.) The Appeals Council rejected Plaintiff's request, concluding that her exceptions to the ALJ's decision did not provide a basis for the Appeals Council to assume jurisdiction. (R. 285-86.)

Plaintiff timely filed another suit with this Court pursuant to 42 U.S.C. § 405(g). In April 2001, this Court issued a second Report and Recommendation (No. 00-2169, #14) recommending that the Commissioner's determination of nondisability be reversed and the case be remanded for further proceedings in accordance with the Court's recommendation. (R. 466-77.) Specifically, the Court concluded that (1) because the Court had previously decided that substantial medical evidence supported the ALJ's determination that Plaintiff's impairments did

not meet the requirements of Section 1.03(A), it need not review that issue again; and (2) the ALJ failed to follow the Court's direction when he neglected to ascertain the specific requirements of Plaintiff's former job and compare those requirements with her physical capabilities. (R. 473, 476.) Accordingly, the Court recommended that Plaintiff's claim for disability be remanded to the ALJ to determine the specific demands of Plaintiff's former job and to ascertain Plaintiff's ability to perform those particular duties in light of her limitations and restrictions. (R. 476.) In addition, because ALJ Rickert had considered Plaintiff's claim twice already, the Court recommended that a different ALJ be assigned to the case. (R. 476.) In May 2001, the District Court accepted the Report and Recommendation and entered judgment remanding the case to the Commissioner. (R. 480.)

In January 2002, ALJ Barbara Welsch held a hearing at which Plaintiff and VE Dr. James Lanier testified. (R. 803-41. ) The ALJ held an additional hearing in July 2002 at which Plaintiff's attorney cross-examined Dr. Lanier regarding his qualifications. (R. 720-802.) In September 2002, the ALJ held a third hearing at which a second VE, Bonnie Gladden, testified. (R. 672-719.)

In May 2003, ALJ Welsch issued a decision denying Plaintiff benefits. (R. 456-65.) The ALJ made the following findings: (1) the claimant had met the disability insured status requirements of the Social Security Act on November 11, 1986, and continued to meet them through December 31, 1991; (2) the claimant has not engaged in substantial gainful activity since her alleged onset date of November 11, 1986; (3) the medical evidence established that the claimant had degenerative arthritis of the right hip and degenerative joint disease of the right knee and mild asthma but she did not have an impairment or combination of impairments at listing level; (4) the claimant's alleged degree of pain and functional limitations were not credible because they were not supported by the medical evidence or relevant credibility factors; (5) as of her date last insured, the claimant had the residual functional capacity to perform the physical exertional and non-exertional requirements of work except for lifting and carrying more than ten pounds at a time or small objects occasionally; she could not perform climbing or prolonged walking or repetitive stooping or bending; she requires work that allows her to sit or

stand as needed and to stand when reaching; she requires a job that allows her to use headphones for telephone work; and she is limited to unskilled entry-level work; (6) the claimant cannot perform past relevant work; (7) the claimant's residual functional capacity for the full range of sedentary work is reduced by her non-exertional limitations; (8) the claimant is a younger individual; (9) the claimant completed a high school education and two years of college; (10) transferable work skills are not an issue for this decision; (11) based on an exertional capacity for sedentary work and the claimant's vocational factors, the Medical Vocational Guidelines would direct a conclusion of "not disabled"; (12) although the claimant's additional non-exertional limitations did not allow her to perform a full range of sedentary work, using the above cited rule as a framework for analysis, there were a significant number of jobs in the national economy which she could have performed as of her date last insured, as identified by the VE; and (13) the claimant was not under a "disability" at any time relevant to this decision. (R. 464-65.) Accordingly, the ALJ denied Plaintiff's application for benefits.

The Appeals Council denied Plaintiff's timely request for review. (R. 443-46.) In December 2005, Plaintiff filed her complaint in this case seeking judicial review of the final decision by the Regional Commissioner of the SSA denying DIB. In July 2006, Plaintiff filed a motion for summary judgment, and in September 2006, Defendant filed a cross-motion for summary judgment.

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Regional Commissioner as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court gives considerable deference to the ALJ's credibility determinations and will

not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

### III. Analysis

To be considered eligible for social security benefits, a claimant must be disabled. The SSA defines "disabled" as "the inability to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations set forth a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)-(f). The ALJ must follow these steps in sequence, considering: (1) whether the claimant is presently employed; (2) whether the claimant's impairment is "severe"; (3) whether the claimant's impairment meets or exceeds one of a list of specific impairments; (4) whether the claimant is unable to perform his or her former occupation; and (5) whether the claimant is unable to perform any other work within the economy. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984).

In accordance with the District Court's remand of the case, the ALJ limited her analysis to Steps Four and Five of the sequential evaluation. (R. 457.) At Step Four, the ALJ determined that Plaintiff could not perform her past relevant work. As a result, the ALJ rested her decision on Step Five, finding that Plaintiff had not demonstrated by credible evidence that she could not perform a significant number of jobs in the national economy as of her date last insured.

Plaintiff argues that the ALJ erred at Steps Three, Four, and Five. As to Step Three, Plaintiff asserts that because the ALJ reopened the case by analyzing the entire claim pursuant to the five-step analysis set forth under 20 C.F.R. § 404.1520, this Court has the authority to review the entire analysis and should find that Plaintiff's impairments in fact qualify under Listing 1.03(A). As to Step Four, Plaintiff contends that the ALJ failed to inquire about the exact duties involved in her prior employment and to ascertain Plaintiff's ability to perform those particular

tasks in light of any attendant limitations and restrictions, in accordance with the Court's April 2001 recommendation. At Step Five, Plaintiff argues that the ALJ erred by (1) failing to consider the testimony of VE Lanier without first making a determination as to his qualifications, (2) allowing the VE to take into account potential accommodations for Plaintiff's disability, and (3) failing to include Plaintiff's description of her limitations in the hypothetical questions posed to the VE.

### A.  Step Three:  Plaintiff's Impairments

Plaintiff first argues that the ALJ reopened the case by analyzing the entire claim pursuant to the five-step analysis set forth under 20 C.F.R. § 404.1520, therefore, this Court has the authority to review the entire five-step analysis. As a result, Plaintiff takes issue with Step Three of the analysis and contends that her impairments in fact qualify her as disabled under Listing 1.03(A).

In its February 1998 Report and Recommendation, the Court concluded that substantial medical evidence supported the ALJ's determination that Plaintiff's impairments did not meet the requirements of Section 1.03(A) which addresses degenerative arthritis. The Court reaffirmed that conclusion in its April 2001 Report and Recommendation. Because the Court has already decided this issue, it need not review it here.

### B.  Step Four:  Plaintiff's Ability To Perform Her Former Job

Although the ALJ reached a conclusion favorable to Plaintiff at Step Four, Plaintiff contends that (1) the ALJ failed to follow this Court's instructions to specify the duties involved in her prior position; and (2) the ALJ erred when she "skipped" Step Four and proceeded to Step Five.

In support of her premise that the ALJ failed to perform a Step Four analysis, Plaintiff points to language in the ALJ's decision that indicates she disagreed with the Court's previous remand order. The ALJ stated as follows: "To avoid the red herring of how the claimant actually performed her secretarial/clerical job, the undersigned finds that the claimant is not

disabled at Step Five, even if claimant had no past relevant work." (R. 458.) She also stated that she found "for the sake of argument, that the claimant can not return to past relevant work and will move on to other jobs at Step Five." (R. 459.) Nevertheless, the Court notes that the ALJ also stated as follows: "While the undersigned adopts the District Court's findings regarding the first three Steps of the Sequential Evaluation, and further considers the claimant unable to perform past relevant work at Step Four; the decision will briefly discuss each step." (R. 459.) ALJ Welsch then did so, including performing a Step Four analysis as discussed below.

In the April 2001 recommendation, the Court remanded for the ALJ "to determine the specific demands of Plaintiff's former job and to ascertain Plaintiff's ability to perform those particular duties in light of her limitations and restrictions." (R. 476.) The Court was concerned that the ALJ relied on generic descriptions of Plaintiff's job to decide whether Plaintiff could perform her former job at Step Four. (R. 476.) Specifically, the Court found that the ALJ had not considered: (1) Plaintiff's testimony that, during the time she worked as a secretary, she was at her desk ninety to ninety-five percent of the time and that she needed to take breaks every fifteen minutes; (2) evidence that, as of November 1989, Plaintiff could flex her hip a maximum of ninety degrees, and doing so caused her much pain; and (3) Plaintiff's assertion that, while sitting at a desk, she had to lean forward to answer the phone and retrieve papers and items from the desk surface and desk drawers, and that movement required her to flex her hip more than ninety degrees.

On remand, the ALJ complied with the Court's order to evaluate the specific duties of Plaintiff's job. The ALJ sought additional testimony regarding the actual demands of Plaintiff's past work and whether she could perform that work. (R. 804-26.) The ALJ allowed Plaintiff's attorney to question Plaintiff specifically in order to address the concerns noted by this Court. (R. 808-09.) The ALJ held hearings to obtain additional VE testimony. (R. 672-719, 720-802, 803-41.) VE Gladden testified that Plaintiff's past relevant work, which had previously been described as sedentary (as usually performed), is more accurately described as a clerical job at the light level of exertion (as Plaintiff actually performed it). (R. 462.) The ALJ described Plaintiff's limitations as follows: Plaintiff cannot perform prolonged walking or repetitive

stooping/bending; she requires work that allows her to sit or stand as needed and to stand when reaching; and she requires a job that allows her to use headphones for telephone work. (R. 462.) In light of these limitations and restrictions and VE Gladden's testimony, the ALJ found that Plaintiff could not perform her most recent past work as actually performed including the specific demands of lifting more than ten pounds and prolonged and persistent walking. (R. 462.) The Court concludes that this analysis is adequate.

Furthermore, even if the ALJ *had* skipped the Step Four analysis, this would not affect the outcome of the decision. Plaintiff's contention that "skipping" a step of the five-step sequential process is grounds for remand is not persuasive given the circumstances of this case. Plaintiff relies on *Scott v. Barnhart* for that proposition, but *Scott* states that this is true only where the analysis is material to the outcome of the case. *Scott v. Barnhart*, 297 F.3d 589, 595 (2002) (citing *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.")). ALJ Rickert's decisions were based on his Step Four analyses. The Court recommended remanding the previous decisions because the Step Four analyses were insufficient and the ALJ's decisions were based on those analyses. In contrast, notwithstanding the statements Plaintiff quoted from ALJ Welsch's decision, ALJ Welsch performed a Step Four analysis. In addition, she considered Plaintiff's ability to perform other jobs (Step Five). Finally, unlike the previous decisions, ALJ Welsch's ultimate decision is based on the Step Five analysis. Under those circumstances, even if ALJ Welsch had "skipped" Step Four, it would not have affected the decision in this case.

**C. Step Five: Plaintiff's Ability To Perform Any Other Work in The Economy**

Plaintiff next argues that the ALJ erred in her Step Five analysis by: (1) obtaining testimony from two different VEs without first finding that one of the VEs was not qualified; (2) impermissibly allowing the VE to consider ADA accommodations in her answers to the hypothetical questions; and (3) rejecting Plaintiff's description of her limitations and failing to incorporate those limitations into the hypothetical question posed to the VE.

### 1.  Obtaining Testimony from Two Vocational Experts

Plaintiff contends that the ALJ's act of obtaining testimony from two different VEs without a finding that the first expert was not qualified violates due process and represents bias on the part of the ALJ.  Plaintiff's suggestion that the ALJ was "shopping" for a VE who would support a denial of benefits is disingenuous.  In fact, the second VE, Bonnie Gladden, offered testimony that was *more* favorable to Plaintiff than Dr. Lanier's testimony.  Dr. Lanier had testified that Plaintiff's past work as generally performed was exertionally sedentary and that Plaintiff could perform that work.  VE Gladden, however, testified that Plaintiff's past work was more properly classified as exertionally light, such that Plaintiff would not be able to perform that work.  Based on the testimony of VE Gladden, the ALJ reached a conclusion at Step Four that was more favorable than it might have been if the ALJ had relied on VE Lanier's testimony.  Accordingly, the Court concludes that the ALJ's decision to obtain testimony from a second VE did not demonstrate bias.

Furthermore, Plaintiff's argument that the ALJ erred by failing to make a formal finding that Dr. Lanier was not qualified is unpersuasive.  The ALJ notified Plaintiff's attorney that the Regional Office had determined that Dr. Lanier was qualified to testify as a VE.  (R. 578-79.)  Nevertheless, she held a second hearing in July 2002 to give Plaintiff's attorney an opportunity to question Dr. Lanier regarding his qualifications.  Plaintiff apparently continued to object to Lanier's qualifications and the ALJ apparently decided to avoid any possible issues regarding whether Dr. Lanier was qualified by seeking testimony from a different VE.  In September 2002, the ALJ held a third hearing at which VE Bonnie Gladden testified.  Plaintiff cannot now complain that the ALJ erred by deferring to Plaintiff's objections regarding Dr. Lanier.  Accordingly, the Court concludes that the ALJ did not err by obtaining testimony from VE Gladden.

### 2.  Consideration of ADA Accommodations

Plaintiff also argues that the ALJ erred by allowing the VE to consider ADA accommodations, such as chairs that tip forward, tables that adjust in height, and the use of

headphones, in her answers to the ALJ's hypothetical questions. The Supreme Court has noted that "when the SSA determines whether an individual is disabled for [DIB] purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for [DIB]." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999).

Plaintiff misinterprets the VE's testimony. The VE testified that Plaintiff could perform other work in the economy simply by arranging her workstation so that objects (including her telephone) were close enough to reach without leaning forward or by standing up when reaching for an object. (R. 678-79.) Thus, even if the typical employer would not have provided accommodations under the ADA such as chairs that tip forward or telephone headsets (which Plaintiff asserts without authority constitute ADA accommodations), Plaintiff could still have performed the work. The VE repeatedly testified on cross-examination that the jobs identified would not require Plaintiff to flex her hip beyond ninety degrees. (R. 707-11.)

The Court notes that the ALJ stated that Plaintiff requires a job that allows the use of headphones for telephone work. However, some of the jobs that the VE testified Plaintiff could perform do not require any phone work, for example, cashier and assembly work. Accordingly, if the ALJ erred by referring to headphones, the Court concludes that such error is harmless. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harless error review to ALJ's determination).

Plaintiff also states that the VE's testimony is "highly speculative" and "not remotely credible or logical." This Court is required to give considerable deference to the ALJ's credibility determinations and will not overturn them unless Plaintiff shows that those findings are patently wrong. *Urban*, 799 F. Supp. at 911. Here, the ALJ determined that the VE's testimony that an employee could arrange her desk to avoid painful physical positions was credible. Plaintiff has not shown that this finding was patently wrong. Accordingly, the Court will defer to the ALJ's finding regarding the VE's credibility.

### 3. Failing To Consider Plaintiff's Self-Described Limitations

Plaintiff argues that the ALJ improperly rejected her testimony and statements that she could not flex her hip beyond eighty-five to ninety degrees and improperly failed to incorporate this limitation into the hypothetical questions to the VE. Plaintiff also contends that the ALJ improperly assumed that (1) nothing prevented Plaintiff from standing up and reaching for items rather than reaching for them while seated; and (2) bending at the waist does not involve movement of the hip joint.

The Court has reviewed the hearing transcript and concludes that the ALJ did not make any improper assumptions. The ALJ relied on the VE's testimony to determine if any jobs would permit Plaintiff to stand up and reach for items, rather than reaching for them while seated. The ALJ did not assume that bending at the waist would not involve hip movement, either. To the contrary, she assumed that bending at the waist would require such movement, as indicated by her questioning regarding the sit-stand option. (R. 678-79.) Thus, the ALJ fully considered Plaintiff's limitations and incorporated them appropriately into her hypothetical questions.

### IV. Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgement **(#12)** be **DENIED**.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objection on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 20th day of November, 2006.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
